UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ANNA VIRGONA,

                                  05-CV-10856 (GEL)

               Plaintiff,

        - against -            **PLAINTIFF'S STATEMENT**
                                       **PURSUANT TO RULE 56.1**
TUFENKIAN IMPORT-EXPORT VENTURES,
INC. and JAMES TUFENKIAN,

               Defendants.
------------------------------------X

      Plaintiff ANNA VIRGONA, by her attorney, Robert J. Barsch,

Esq., as and for her Statement Pursuant to Rule 56.1 of Material

Facts for which she contends that there is a genuine issue to be

tried, and for which she contends that there is no genuine issue

to be tried on her Cross-Motion, alleges as follows:

      1.  Plaintiff admits the statement in paragraph "1"

contained in the "Undisputed Facts" section of Defendants'

Memorandum of Law.

      2.  Plaintiff admits the statement in paragraph "2".

      3.  Plaintiff disputes the statement in paragraph "3".

      4.  Plaintiff disputes the statement in paragraph "4".

      5.  Plaintiff disputes the statement in paragraph "5".

      6.   Plaintiff admits the statement in paragraph "6".

      7.  Plaintiff disputes the statement in paragraph "7".

      8.  Plaintiff disputes the statement in paragraph "8".

      9.  Plaintiff disputes the statement in paragraph "9".

      10.  Plaintiff disputes the statement in paragraph "10".

11.   Plaintiff admits the statement in paragraph "11".

12.   Plaintiff disputes the statement in paragraph "12".

13.   Plaintiff admits the statement in paragraph "13".

14.   Plaintiff admits the statement in paragraph "14".

15.   Plaintiff admits the statement in paragraph "15".

16.   Plaintiff disputes the statement in paragraph "16".

17.   Plaintiff become employed by defendant Tufenkian Import-Export Ventures, Inc. ("Ventures") in October 1998 as a staff accountant.  Her duties included reconciling the bank accounts, maintaining schedules, preparing entries for the general ledger, assisting in the preparation of monthly financial statements, preparing payroll, preparing for the month end and year end closings, and handling royalty management and payment. Her direct supervisor was Mr. Rosansky, and then Eric Jacobson in August 1999.  See Affidavit of Plaintiff Anna Virgona ("Virgona Affidavit"), at para. 2.

18.   Plaintiff was aware of the payroll for defendant Ventures as part of her job duties.  In or about March or April, 2002, plaintiff complained to Mr. Jacobson that her salary was low.  The reason was that she was given additional duties with the promise of additional pay.  The additional duties resulted from the commencement of two retail affiliates of defendant Ventures, and plaintiff was asked to take care of the books of both entities.  Further, due to the company not replacing

2

employees, her workload increased.  Plaintiff also told Mr. Jacobson that she wanted a promotion to Controller, since she was performing the duties of the Controller.  See Virgona Affidavit, at para. 3.

19.  Plaintiff's job duties overlapped with that of Mr. Mohammed Elgayar, the Controller of the company.  Mr. Elgayar was hired after plaintiff, and she performed his duties prior to his hire.  Plaintiff performed his duties after Mr. Elgayar was terminated in January 2002, although he was allowed to stay on. Specifically, plaintiff prepared financial statements and the weekly money flow short reports.  The salary of Mr. Elgayar was approximately $78,000 per year.  Mr. Elgayar did not work a full day.  He mostly slept at his desk, worked on his own personal projects, and took long walks.  See Virgona Affidavit, at para. 4.

20.  Plaintiff observed defendant James Tufenkian, President of defendant Ventures, on an almost weekly basis.  He would come to plaintiff if there was no one in the department to get a check or for financial information, such as the bank reports.  He had to be the person to open all bank statements and he would do spot checks on them.  Mr. Tufenkian oversaw every aspect of the company.  Plaintiff once witnessed Mr. Tufenkian chastise Mr. Jacobson for buying a coffee pot.  Mr. Tufenkian is the sole shareholder of defendant Ventures.  See Virgona Affidavit, at

para. 5.

21.  Mr. Jacobson obtained Mr. Tufenkian's consent for the
plaintiff's termination.  See Deposition of Eric Jacobson,
attached as Exhibit "D" to the Affirmation of Jeffrey H. Miller,
Esq., at p. 10, l. 15 – p. 11, l. 13.

22.  In November, 2002, plaintiff received a raise of 1%.
Plaintiff had been expecting a raise of 4%, which was the maximum
allowed under the company's guidelines.  Plaintiff told Mr.
Jacobson that she was not satisfied, and that she expected more.
Plaintiff reminded him of his promise earlier in the year, and
stated that she was performing more work.  Mr. Jacobson said
nothing to ease her concerns or explain his actions.  See Virgona
Affidavit, at para. 6.

23.  Plaintiff did come in about ten minutes late each day
for a week after the meeting with Mr. Jacobson about the raise.
However, the lateness was to compensate for the times that
plaintiff came in early without compensation.  Plaintiff was an
hourly employee.  See Virgona Affidavit, at para. 7.

24.  As to performing the additional work for the new retail
companies, plaintiff told Mr. Jacobson that she would no longer
do the work.  Mr. Jacobson said nothing in response.  See Virgona
Affidavit, at para. 8.

25.  Mr. Jacobson treated women differently in the terms and
conditions of employment.  For example, of the managers, only

4

Leila Mae Makdissi had to pay for the family health insurance coverage.  Women were paid less at the company.  <u>See</u> Virgona Affidavit, at para. 9.

26.  Mr. Jacobson only asked women to make coffee at the office, even female managers.  He would hold managers meetings, and not invite the female managers, such as Ketsia Elie, Nancy Facchino, and Ms. Makdissi.  Or, he would only have the female managers present for their portion of the meeting, after which they would be dismissed.  He would make disparaging comments only to the women, such as when there were office birthday parties, he would ask plaintiff if she should being eating cake.  <u>See</u> Virgona Affidavit, at para. 10.

27.  As to lateness, Yemi Ade-Ojo, the Inventory Control Manager, came into the office customarily late, usually after 10:30 a.m.  Mr. Jacobson never reprimanded him until the women in the office pointed out to him how unfair the situation was.  Mr. Ade-Ojo always got a higher raise than plaintiff did, without taking on new responsibilities.  <u>See</u> Virgona Affidavit, at para. 11.

28.  Also, during the course of plaintiff's employment, four employees were demoted, Mr. Jacobson, Neal Birnbaum, Jeff Rogers and Ms. Makdissi.  Ms. Makdissi received a pay cut, but the men did not.  <u>See</u> Virgona Affidavit, at para. 12.

29.   Upon plaintiff's termination, she was owed the sum of $1,342 for six days of unpaid wages.  To date, this sum has not been paid by defendant Ventures.  Plaintiff refused to sign any severance package agreement since it contained a general release. Plaintiff was not paid any severance, although defendant had a policy of paying six weeks severance.  Plaintiff is owed an additional $6,712.  See Virgona Affidavit, at para. 13.

30.   Defendant Ventures pay severance to its employees.  See Deposition of Jacobson, at p. 50, ll. 6-7.

31.   Plaintiff took no action to harm the business of defendant Ventures.  Plaintiff did not delete any accounting or other files, either on the business premises or from her home. All computer files at defendant Ventures's offices are backed up, so there could be no loss of data.  Plaintiff only took copies of files that she was working on at home, and have since deleted. Plaintiff had given Mr. Jacobson the passwords for the computer several times, and she took no action to password-protect any files, rendering them useless.  In an email dated January 11, 2003, plaintiff advised Mr. Jacobson that she no longer had the passwords, and that she had given them to him in the past.  See Virgona Affidavit, at para. 14.

32.   Plaintiff was replaced by a male, Dan Stoian, who was given the title Assistant Controller.  See Deposition of Jacobson, at p. 7, l. 15 – p. 18, l. 5.

6

Dated:   January 9, 2008
         New York, New York

                                        Yours, etc.,


                                        /s/ Robert J. Barsch
                                        Robert J. Barsch, Esq.
                                        RB 1612
                                        Attorney for Plaintiff
                                        60 East 42nd Street
                                        Suite 2912
                                        New York, NY 10165
                                        212-986-2251

7